# Third District Court of Appeal

**State of Florida**

Opinion filed August 1, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-1246
Lower Tribunal No. 13-20646

_____

**Eduardo Gonzalez and Rosa Gonzalez,**
Appellants,

vs.

**Federal National Mortgage Association,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Thomas J. Rebull, Judge.

Rosa M. Armesto, for appellants.

Choice Legal Group, P.A., and Robert R. Edwards (Fort Lauderdale), for appellee.

Before LAGOA, FERNANDEZ, and LUCK, JJ.

LAGOA, J.

Appellants Eduardo Gonzalez and Rosa Gonzalez (collectively, "Appellants") appeal the entry of a final judgment of foreclosure in favor of Appellee Federal National Mortgage Association ("Fannie Mae"). We affirm.

I.    FACTUAL AND PROCEDURAL BACKGROUND

In February 2002, Appellants executed a Note and Mortgage in favor of Chase Manhattan Mortgage Corporation ("Chase"), which endorsed the Note in blank and transferred ownership to Fannie Mae. Appellants made payments on the Note until April 2007. On August 8, 2007, Chase sent Appellants a default letter, notifying them that they were in default for an amount of $11,414.42, which included principal, interest, escrow, late charges, and fees, for failing to make the required monthly installments and late charges owed on the Note. The default letter gave Appellants thirty days from the date of letter to cure the default. Appellants failed to cure the default, and on October 3, 2007, Chase filed a complaint to foreclose and accelerate the full amount due on the Note. Chase alleged that Fannie Mae was the owner of the Note, that Chase was Fannie Mae's servicer, and that Appellants defaulted on "the payment due June 01, 2007 and all subsequent payments." This initial complaint was dismissed by the trial court.[1]

Chase subsequently filed the instant action on June 12, 2013, again alleging that Appellants were in default from the payment due on June 1, 2007, and all subsequent payments, and again exercising its right to accelerate all amounts due under the Note and Mortgage. Chase was later substituted as the party plaintiff by Fannie Mae on October 7, 2014.

---

[1] It is unclear from the record why this initial complaint was dismissed.

2

On March 16, 2017, the case proceeded to bench trial. Through the testimony of a Seterus[2] employee, Jon Greenlee ("Greenlee"), Fannie Mae introduced the following evidence: (1) a limited power of attorney Fannie Mae provided to Seterus; (2) the original Note; (3) the Mortgage; (4) an escrow disclosure statement; (5) a copy of the August 8, 2007, breach letter; (6) a screenshot showing that the breach letter was mailed to Appellants; (7) a letter indicating that the loan service had been transferred from Chase to Seterus; (8) a screen printout showing that Fannie Mae acquired ownership of the loan on April 1, 2002; (9) three sets of loan payments histories; and (10) judgment figures that were substantiated by Greenlee's testimony.

Rosa Gonzalez also testified at trial that Appellants were current on the Note until April 2007, when their credit union reversed the payment. She further testified that she made two full monthly payments on June 14, 2007, and August 7, 2007, which Chase applied to the Note, and two partial payments on July 16, 2007, and August 7, 2007, both of which went unapplied. She further testified that she mailed two checks to Chase in October 2007, which Chase returned because the checks were insufficient to cure the default. It is undisputed that Appellants did not tender a full payment of the $11,414.42 demanded by the default letter.

---

[2] In 2014, Fannie Mae changed its loan servicer from JPMorgan Chase Bank, N.A., the successor-by-merger to Chase, to Seterus, another loan servicing company.

On May 9, 2017, the trial court entered a Final Judgment of Foreclosure in favor of Fannie Mae in the amount of $467,527.41. This timely appeal ensued.

## II. STANDARD OF REVIEW

To the extent the trial court's final judgment of foreclosure "'is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review.'" Verneret v. Foreclosure Advisors, LLC, 45 So. 3d 889, 891 (Fla. 3d DCA 2010) (quoting Colucci v. Kar Kare Auto. Grp., Inc., 918 So. 2d 431, 436 (Fla. 4th DCA 2006)).

## III. ANALYSIS

On appeal, Appellants raise several arguments challenging the trial court's entry of Final Judgment of Foreclosure in favor of Fannie Mae. We affirm the trial court's entry of Final Judgment of Foreclosure, but we write to address one of the arguments raised by Appellants. Specifically, Appellants contend that Fannie Mae is barred by the five-year statute of limitations[3] from collecting any amounts that were due on the Note prior to the dismissal of the first action, as the instant complaint alleges the same default date—June 1, 2007—as alleged in the first action.

In Bartram v. U.S. Bank National Ass'n, 211 So. 3d 1009 (Fla. 2016), the Florida Supreme Court stated that:

---

[3] See § 95.11(2)(c), Fla. Stat. (2013).

4

> [w]hen a mortgage foreclosure action is involuntarily dismissed . . . , the effect of the involuntary dismissal is revocation of the acceleration, which then reinstates the mortgagor's right to continue to make payments on the note and the right of the mortgagee, to seek acceleration and foreclosure based on the mortgagor's subsequent defaults.

Id. at 1012. The mortgagee, however, has "the right to file a subsequent foreclosure action—*and to seek acceleration of all sums due under the note*—so long as the foreclosure action was based on a *subsequent default*, and the statute of limitations had not run on that particular default." Id. at 1021 (emphasis added); accord Wells Fargo Bank, NA v. BH-NV Invs. 1, LLC, 230 So. 3d 60, 62 (Fla. 3d DCA 2017). "Each 'alleged default create[s] a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action.'" Bollettieri Resort Villas Condo. Ass'n, Inc. v. Bank of N.Y. Mellon, 198 So. 3d 1140, 1142 (Fla. 2d DCA 2016) (quoting Singleton v. Greymar Assocs., 882 So. 2d 1004, 1008 (Fla. 2004)).

In the instant case, Fannie Mae's Verified Complaint alleges that "[t]here has been a default under the note and mortgage held by Plaintiff in that the payment due June 1, 2007 and *all subsequent payments have not been made.*" (emphasis added). It was undisputed at trial that Appellants did not renew making payments on the Note after the dismissal of the initial complaint. Thus, Fannie Mae's second foreclosure action was not barred by the statute of limitations. See Bank of N.Y. Mellon Corp. v. Anton, 230 So. 3d 502, 504 (Fla. 3d DCA 2017).

Appellants argue, however, that the statute of limitations bars Fannie Mae from collecting any amounts due on the Note more than five years prior to the filing of the second complaint, i.e., any amounts due before June 12, 2008. In support of this argument, Appellants cite to language from this Court's decision in Deutsche Bank National Trust Co. v. Torres, 43 Fla. L. Weekly D991 (Fla. 3d DCA May 2, 2018), where this Court stated that the bank "may be barred from seeking certain defaulted payments under the note (those falling outside the five-year statute of limitations)." Id. at D991. This quoted language is inapplicable, however, as it was dicta[4] and was not necessary to this Court's determination in Torres that a "complaint . . . filed more than five years after the alleged initial default date" is not barred where "the complaint also alleges that the borrower defaulted 'by failing to pay the payment due 5/01/2008 and all subsequent payments.'" Id. (emphasis in original). As the Florida Supreme Court clearly held in Bartram, "with each subsequent default, the statute of limitations runs from the date of each new default providing the mortgagee the right, but not the obligation, to accelerate all sums then due under the note and mortgage." 211 So. 3d at 1019;

---

[4] See Hilkmeyer v. Latin Am. Air Cargo Expediters, Inc., 94 So. 2d 821, 825 (Fla. 1957) (stating that language which "was not necessary to the determination of the cause . . . was therefore obiter dicta"); Bellsouth Telecomms., Inc. v. Church & Tower of Fla., Inc., 930 So. 2d 668, 673 (Fla. 3d DCA 2006) (finding that language in case citing and quoting from another case was not dicta but was "critical to the outcome" of that case, as dicta is defined as "a judicial comment in an opinion that is 'unnecessary to the decision in the case and therefore not precedential'" (quoting Blacks's Law Dictionary 1102 (8th ed. 2004))).

accord Torres, 43 Fla. L. Weekly at D991 (quoting Bartram, 211 So. 3d at 1019); see also Bollettieri Resort Villas Condo. Ass'n v. Bank of N.Y. Mellon, 228 So. 3d 72, 74 (Fla. 2017) (Lawson, J., specially concurring) (discussing the running of the statute of limitations in the foreclosure context and noting that a mortgagee "must bring suit for all amounts due under the note, which it cannot do under the terms of the note until maturity—unless it gives notice that it intends to act on a default (missed payment) by accelerating and declaring the entire balance due immediately" (citation omitted)); Desai v. Bank of N.Y. Mellon Tr. Co., 240 So. 3d 729 (Fla. 4th DCA 2018) (finding a similar argument made by the borrower to be without merit under Bartram); In re BCML Holding LLC, 65 Bankr. Ct. Dec. 193 (Bankr. S.D. Fla. 2018) (finding a similar argument made by the debtor-in-possession which had purchased a condominium subject to defendant's mortgage and which was seeking a default judgment against the defendant that excluded payment amounts outside the five year limitations period to be without merit under Bartram).

As discussed below, we conclude that Fannie Mae is *not* barred from seeking a final judgment that includes amounts due outside the five-year statute of limitations, as Fannie Mae alleged that Appellant had defaulted within the limitations period and that Fannie Mae had exercised its right to accelerate all sums due under the Note and Mortgage. In a typical residential loan, the terms of the note and mortgage split the entirety of the debt owed by the borrower into a

7

series of periodic installment payments. If a borrower defaults, the note holder could choose to seek a judgment only for that missed installment payment. More typically, and as occurred here, the note holder can choose to exercise its contractual right to accelerate the entirety of the borrower's obligation under the note and mortgage and seek a judgment on that amount.[5] By exercising its contractual right to acceleration, the note holder is not seeking to collect a series of individual past and future installment payments due to it. Instead, the holder elects to accelerate the entirety of the obligation owed to it under the terms of the note and mortgage, such that the entire sum owed—including principal, interest, advances, costs, and fees—will be included in the judgment. It is that entire debt—not individual installments of it—that comes due upon acceleration and that is sought to be liquidated in a foreclosure action. Thus, when considering an accelerated obligation, while the triggering default must occur within the five year limitations period, the debt that is subject to judgment and collection is the

---

[5] In paragraph 6(C) of the Note, the Appellants affirmed that upon a default, the note holder may send notice that the holder "may require me to pay immediately the full amount of the Principal which has not been paid and all interest that I owe on that amount." Paragraph 6(E) of the Note further provides that upon acceleration the note holder may also recover its costs and expenses, including attorneys' fees. Finally, Paragraph 10 of the Note expressly incorporates by reference all the remedies available to the note holder under the Mortgage, including its right to acceleration.

Turning to the Mortgage, Paragraph 22 of that document provides that a default by the borrower means that the note holder "at its option may require immediate payment of all sums secured by this Security Instrument," as well as costs and expenses, including attorneys' fees.

accelerated debt, i.e., the entire amount due under the mortgage loan. See Bartram, 211 So. 3d at 1019. Because Fannie Mae was seeking a judgment on the accelerated obligation, the trial court properly entered a Final Judgment of Foreclosure in favor of Fannie Mae in the full amount of that obligation.

For those reasons, we disagree with the decision of our sister court, the Fifth District Court of Appeal, in Velden v. Nationstar Mortgage, LLC, 234 So. 3d 850 (Fla. 5th DCA 2018), which Appellants cite in support of their argument. In Velden, the Fifth District "reverse[d] and remand[ed] for the trial court to exclude an award of damages for any defaults that occurred more than five years prior to the filing date," relying on its recent precedent. See id. at 852. We find Velden to be contrary to the Florida Supreme Court's decision in Bartram and decline to follow the Fifth District's reasoning. See id. at 852-53 (Lambert, J., specially concurring) (noting that under Bartram, because "Velden . . . defaulted on subsequent monthly note payments[,] . . . Nationstar's predecessor . . . 'had the right to file a subsequent foreclosure action—and to seek acceleration of all sums due under the note—so long as the foreclosure action was based on a subsequent default, and the statute of limitations had not run on that particular default'" (quoting Bartram, 211 So. 3d at 1021)). To the extent that this decision conflicts with Velden, we certify conflict.

Accordingly, we affirm the Final Judgment of Foreclosure in favor of Fannie Mae.

9

Affirmed.