[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15681
Non-Argument Calendar
_____

D.C. Docket No. 6:16-cv-01298-RBD-KRS

PAUL A. GREEN,

Plaintiff - Appellant,

versus

SPECIALIZED LOAN SERVICING LLC,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 11, 2019)

Before WILLIAM PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Paul Green brought this action under the Fair Debt Collections Practices Act

("FDCPA"), arguing that Specialized Loan Servicing LLC ("SLS") violated the

FDCPA because it attempted to collect mortgage debt beyond the five-year statute

of limitations. Green stopped paying his mortgage in 2008 and has not made payments since then. Based on a default in 2008, in 2009 the lender accelerated the debt and filed a foreclosure action against Green, which was dismissed in 2011. In 2015, after Green's continued failure to make payments on the mortgage, the lender again accelerated the debt and filed another foreclosure action based on a second default. Green alleges that by seeking the full amount of debt, including the amount of payments that came due more than five years earlier, SLS engaged in unlawful debt collection of time-barred debts.

The case presents three primary issues, all in the context of potential FDCPA violations: (1) whether the 2015 Foreclosure Complaint filed by SLS constituted unlawful debt collection of time-barred amounts; (2) whether the 2017 Mortgage Statement sent to Green by SLS constituted unlawful attempted debt collection of time-barred payments; and (3) whether the district court erred by not addressing whether SLS had attempted unlawful debt collection of attorney's fees. For the following reasons, we affirm.

## I.    BACKGROUND

Paul Green executed a Note and Mortgage for approximately $180,000 at an adjustable rate in September 2006. Deutsche Bank was the lender, and SLS was the servicer of the mortgage. The Note provided that failure to pay the full amount of each monthly payment would constitute a default under the Note. In the event of a

2

default, the Note allowed the note holder to, at its discretion, give Green notice of acceleration, such that all sums secured by the mortgage would come due if the overdue amount was not paid by a certain date.

In 2008, Green stopped making payments on the loan even though he still owed $176,448.41, and did not resume making payments. In February 2009, Deutsche Bank filed a foreclosure action against Green based on a default in 2008. According to Green, the case was eventually involuntarily dismissed in 2011 for "Plaintiff's failure to file an amended complaint by the deadline set by the court."[1]

In April of 2015, SLS sent Green a notice of default ("2015 Notice of Default") based on his missed payment of July 1, 2010, and subsequent payments. The Notice of Default also warned Green that continued failure to pay "may result in acceleration of the entire balance outstanding." As Green continued to be delinquent in his payments, Deutsche Bank (through its loan servicer, SLS) then filed another foreclosure suit against Green on June 30, 2015 ("2015 Foreclosure Complaint"), alleging that he defaulted by failing make the payment that was due July 1, 2010, and all subsequent payments, and that SLS was accelerating the note,

---

[1] Although Green does not raise this issue, we note that under Florida law the dismissal of the 2009 foreclosure did not prevent SLS from accelerating the loan a second time. "When a mortgage foreclosure action is involuntarily dismissed . . . , either with or without prejudice, the effect of the involuntary dismissal is revocation of the acceleration, which then reinstates the mortgagor's right to continue to make payments on the note and the right of the mortgagee, to seek acceleration and foreclosure based on the mortgagor's subsequent defaults." *Bartram v. U.S. Bank Nat'l Ass'n*, 211 So. 3d 1009, 1012 (Fla. 2016).

meaning Green then owed the full remaining balance due to SLS. The foreclosure complaint asked the court to "ascertain the amount due to Plaintiff for principal and interest on the Mortgage and Note and for late charges, abstracting, taxes, expenses, and costs, including attorney's fees, plus interest thereon."

Green initially filed his Complaint against SLS in state court in Brevard County, Florida, on June 6, 2016. SLS then filed a notice of removal in July of 2016, and the district court stayed the case until the foreclosure case[2] against Green was dismissed in February 2017.[3] SLS then moved to dismiss Green's Complaint, and Green filed an Amended Complaint.

Green's Amended Complaint alleged that SLS violated the FDCPA by trying to collect the debt owed under the mortgage even though some of the amount owed was supposedly barred from recovery under Florida's applicable five-year statute of limitations.

SLS moved to dismiss for failure to state a claim, arguing that the Amended Complaint failed as a matter of law. The district court agreed. In particular, the court cited to *Garrison* in holding that Green's argument regarding the Florida

---

[2] For the remainder of this opinion, we use the term "Foreclosure Complaint" to refer to the foreclosure case against Green that was filed in 2015, unless we specify the 2009 foreclosure case.

[3] The state court dismissed the 2015 foreclosure case because it was based on a default date of July 2010, which was prior to the dismissal of the 2009 foreclosure action in 2011. That decision by the state court was not based on a statute of limitations question, and is not at issue in this case.

statute of limitations for debt collection is "a matter to be raised as a defense in a foreclosure case—not as an affirmative claim under an FDCPA claim related to a mortgage." *Garrison v. Caliber Home Loans, Inc.*, 233 F. Supp. 3d 1282, 1293–94 (M.D. Fla. 2017). The court also found that none of the requested payment amount was time-barred. Green appealed.

## II.    LEGAL STANDARD

This Court reviews *de novo* the decision of a district court to grant a motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (quotations omitted)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## III.    DISCUSSION

The FDCPA prohibits certain debt collection methods, particularly "false, deceptive, or misleading representation or means in connection with the collection of any debt" and "unfair or unconscionable means" of debt collection. 15 U.S.C. § 1692e–f. "The inquiry is not whether the particular plaintiff-consumer was deceived or misled; instead, the question is whether the 'least sophisticated

5

consumer' would have been deceived by the debt collector's conduct." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014) (quotations omitted); *see also LeBlanc*, 601 F.3d at 1194 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)) ("'The least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care."). The FDCPA subjects violators to civil liability. 15 U.S.C. § 1692k(a) (establishing liability to the affected consumer, consisting of actual damages, additional damages, and costs, including attorney's fees); *see also Clomon*, 988 F.2d at 1321–22 .

To overcome a motion to dismiss a FDCPA claim, a plaintiff must allege "among other things, (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012). Threatening and initiating litigation to collect time-barred debt can result in a violation. *Crawford*, 758 F.3d at 1259 ("[W]e must examine whether [the debt collector's] conduct—filing and trying to enforce in court a claim known to be time-barred—would be unfair, unconscionable, deceiving, or misleading towards the least-sophisticated consumer.").

## A. Statute of Limitations for Amount Owed

Green alleges that SLS violated the FDCPA by pursuing the 2015 foreclosure action and attempting to collect time-barred debt.[4] The district court dismissed his claim "because the [Florida statute of limitations] does not reduce the amount that a mortgagee can recover in a foreclosure action that is brought within five years of the accrual date of the action." *Green v. Specialized Loan Servicing LLC*, 280 F. Supp. 3d 1349, 1356 (M.D. Fla. 2017). The primary issue in this appeal—a timely foreclosure action based on a default within the prior five years and filed after an acceleration clause is invoked—is whether a party can seek the amounts of installment payments due *prior* to five years before the action.

Compared to other debt, mortgage debt is "unique" in its nature, due to the "continuing obligations of the parties in that relationship." *See Singleton v. Greymar Assocs.*, 882 So. 2d 1004, 1007 (Fla. 2004). "When the promissory note secured by the mortgage contains an optional acceleration clause [i.e., the entire

---

[4] Green premised his claims on Fla. Stat. § 95.11(2)(b) and (c), which provides as follows:

95.11. Limitations other than for the recovery of real property

Actions other than for recovery of real property shall be commenced as follows:
 . . .
(2) Within five years.--
 . . .
        (b) A legal or equitable action on a contract, obligation, or liability founded on a written instrument, . . . .
        (c) An action to foreclose a mortgage.

Fla. Stat. § 95.11 (2013).

amount of the loan comes due upon default], the foreclosure cause of action accrues, and the statute of limitations begins to run, on the date the acceleration clause is invoked or the stated date of maturity, whichever is earlier." *Smith v. F.D.I.C.*, 61 F.3d 1552, 1561 (11th Cir. 1995); *see also Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 202 So. 3d 859, 861 (Fla.), *opinion after certified question answered*, 844 F.3d 944 (11th Cir. 2016) (noting that the "statute of limitations runs from the time the cause of action accrues").  The Note contains just such an acceleration clause, and SLS gave Green notice of intent to accelerate the full amount of the note on April 8, 2015, and declared it accelerated in its foreclosure complaint of June 30, 2015.

The Florida Supreme Court has held that "if the mortgagee's foreclosure action is unsuccessful for whatever reason, the mortgagee still has the right to file subsequent foreclosure actions—and to seek acceleration of the entire debt—so long as they are based on separate defaults." *Bartram v. U.S. Bank Nat'l Ass'n*, 211 So. 3d 1009, 1020 (Fla. 2016) (quoting *Dorta v. Wilmington Tr. Nat. Ass'n*, No. 5:13-cv-185-Oc-10PRL, 2014 WL 1152917, at *6 (M.D. Fla. Mar. 24, 2014), *aff'd sub nom. Dorta v. Citibank Nat'l Assoc. for Lehman Bros.-BNC Mortg. Loan Tr. 2007-3*, 707 F. App'x 660 (11th Cir. 2017)). "[E]ach subsequent default accruing after the dismissal of an earlier foreclosure action creates a new cause of action." *Id*. "Therefore, with each subsequent default, the statute of limitations runs

8

from the date of each new default providing the mortgagee the right, but not the obligation, to accelerate *all sums then due under the note and mortgage*." *Id.* at 1019 (emphasis added).

> Ultimately, the operative principle is simple:

> [T]he typical lender files suit seeking acceleration of its debt such that the entire sum owing, including principal, interest, advances, costs, and fees, will be included in the judgment. That entire debt . . . is sought to be liquidated in the foreclosure action. When a lender seeks judgment on an accelerated debt, it makes no sense to suggest that any component of that accelerated obligation should be excluded from the judgment because it "came due" more than five years prior. It did not come due more than five years prior. It came due upon acceleration. It is all due presently, both what was to be paid on prior installment dates and what would otherwise be due on future installment dates. The installment dates no longer matter for purposes of the accelerated debt; it is all one debt.

*In re BCML Holding LLC*, No. 18-11600-EPK, 2018 WL 2386814, at *2 (Bankr. S.D. Fla. May 24, 2018). The facts of this case are consistent with the opinion of *In re BCML*, and we agree with its holding.

Accordingly, the debt payment sought by SLS in the Foreclosure Complaint was not time-barred as a matter of law. In compliance with the mortgage and note, based on a July 1, 2010 default by Green, SLS accelerated the debt on June 30, 2015, and the entire outstanding amount of the loan "came due" on that date. It was only then that the statute of limitations period began to run for the full accelerated amount due. Thus, the foreclosure action in June 2015 was timely, and SLS did not

9

improperly seek any payment on the note by filing that action.[5] The district court correctly determined that Florida's statute of limitations "does not reduce the amount that a mortgagee can recover" in this situation. *Id*. at *2–3.

Green cites several cases involving simple installment debt, but those cases are inapposite because they do not address the unique nature of mortgage debt.[6] Green cites to language in *Bartram* contemplating whether the ability of the lender to collect prior missed payments depends on if a prior foreclosure action is dismissed with or without prejudice. But the very same language reiterates that "each subsequent default accruing after the dismissal of an earlier foreclosure action creates a new cause of action, regardless of whether that dismissal was entered with or without prejudice," and says nothing that implies the mortgagee

---

[5] Some district courts have held that the statute of limitations can only be the basis for an affirmative defense in a foreclosure action, and not the basis for an FDCPA cause of action. *See Garrison*, 233 F. Supp. 3d at 1293–94; *Blake v. Select Portfolio Servicing, Inc.*, No. 6:17-cv-1523-Orl-31TBS, 2018 WL 467392, at *3 (M.D. Fla. Jan. 18, 2018). This Court, however, does not need to reach that issue here.

[6] *Isaacs v. Deutsch*, 80 So. 2d 657 (Fla. 1955), concerned the application of the statute of limitations to child support payments. In *Access Ins. Planners, Inc. v. Gee*, 175 So. 3d 921 (Fla. 4th DCA 2015), a Florida appellate court applied a statute of limitations to a breach of contract claim arising out of unpaid installment payments in a commission contract dispute.  Similarly, *Bishop v. Fla. Div. of Ret.*, 413 So. 2d 776 (Fla. 1st DCA 1982), involved a dispute about retirement installment payments pursuant to a contract. None of these cases cited by Green deal with the unique issues presented by a mortgage debt.

Green also cites *Cent. Home Tr. Co. of Elizabeth v. Lippincott*, 392 So. 2d 931 (Fla. 5th DCA 1980), which involved a mortgage, but in which there was "no basis to conclude" that the loan was accelerated. *Id*. at 933. Likewise, in *Greene v. Bursey*, 733 So. 2d 1111 (Fla. 4th DCA 1999), the lender did not exercise its right to accelerate the debt. *Id*. at 1115. Despite the similarity in party names, *Greene* is factually (and orthographically) distinct from *Green*.

cannot then accelerate the entire amount of the mortgage. *Bartram*, 211 So. 3d at 1020; *accord Bank of Am., N.A. v. Graybush*, 253 So. 3d 1188, 1193 (Fla. 4th DCA 2018), *review denied*, No. SC18-1564, 2019 WL 988639 (Fla. Mar. 1, 2019); *Gonzalez v. Fed. Nat'l Mortg. Ass'n*, No. 3D17-1246, 2018 WL 3636467, at *3 (Fla. 3rd DCA Aug. 1, 2018).

Green also points to two opinions decided after *Bartram*. In *U.S. Bank, N.A. v. Diamond*, 228 So. 3d 177 (Fla. 5th DCA 2017), *receded from by Grant v. Citizens Bank, N.A.*, No. 5D17-726, 2018 WL 6816805, at *1 n.1 (Fla. 5th DCA Dec. 26, 2018) (en banc), the court remanded the case for recalculation of the amount owed, and instructed the lower court to exclude the payments that were due longer than five years prior. *Id*. at 179. Similarly, Green points to *Velden v. Nationstar Mortgage, LLC*, 234 So. 3d 850 (Fla. 5th DCA 2018), *receded from by Grant*, 2018 WL 6816805, at *1, in which the court remanded the case, instructing the trial court to "exclude any defaults that occurred more than five years prior to the filing date of the current suit." *Id*. at 851 (quoting *Diamond*, 228 So. 3d at 179). According to Green, both decisions dictate that the amount of payments due more than five years before the current suit was filed are nonrecoverable.

Recently, however, Florida's Fifth District Court of Appeals has explicitly receded from its earlier opinions in *Diamond* and *Velden*. In *Grant v. Citizens Bank, N.A.*, No. 5D17-726, 2018 WL 6816805, at *1 & n.1 (Fla. 5th DCA Dec. 26,

11

2018) (en banc), the court adopted the position of a concurring opinion from the Florida Supreme Court in *Bollettieri Resort Villas Condominium Ass'n v. Bank of New York Mellon*, 228 So.3d 72, 73 (Fla. 2017) (Lawson, J., concurring). Specifically, the court in *Grant* held that "when the right to accelerate the debt for non-payment is optional with the holder of the note, the statute of limitations does not run until the note is due unless the lender or holder accelerates and declares the full balance due earlier." *Grant*, 2018 WL 6816805, at *1. Contrary to the implications of *Velden*, delay in accelerating a debt does "not constitute a waiver or defense against future collection of all sums due and owing under the note," including the amounts of payments due more than five years prior. *Id.* at *2. In sum, Green may no longer rely on *Diamond* and *Velden*.

### B. Mortgage Statements as "Debt Collection"

Separate from his arguments about the statute of limitations issue related to the Foreclosure Complaint, Green also alleges that the monthly mortgage statements sent by SLS demanded a payment amount that falsely included time-barred payments from more than five years prior, in violation of the FDCPA. In particular, Green points to the "important messages" section of the January 18, 2017 Mortgage Statement which states, "You are currently due for the 7/01/2010 payment" and shows a total amount due that includes time-barred payments. SLS, in response, argues that the mortgage statement SLS sent Green are not "debt

12

collection." The district court examined that language and determined that "the 2017 Statement does not add impermissible demands for payment not called for in a regular [Truth in Lending Act ("TILA")] Statement." *Green*, 280 F. Supp. 3d at 1355.

We must determine whether the January 18, 2017 mortgage statement is an unlawful debt collection communication. 15 U.S.C.A. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."). TILA requires lenders to send mortgage statements that contain certain information,[7] "for each billing cycle at the end of which there is an outstanding balance in that account or with respect to which a finance charge is imposed." 15 U.S.C. § 1637(b); 12 C.F.R. § 1026.41.

We find nothing in the language in question from the Mortgage Statement, beyond what is required by TILA, which rises to the level of being unlawful debt collection language. Green argues that SLS should have reduced the total amount due shown on the statement, because it "cannot be helpful information" to include the amounts of payments due beyond five years prior.  But the TILA regulations in fact require that the statement include delinquency information, including the "length of the consumer's delinquency." 12 C.F.R. § 1026.41(d)(8). And under

---

[7] 12 C.F.R. § 1026.41(d) lists numerous requirements for the layout and content of a periodic mortgage statement, grouped into sections including "Amount due," "Explanation of amount due," "Past Payment Breakdown," "Transaction activity," and "Delinquency information."

13

Florida law, a lien remains on a property throughout the term of the mortgage irrespective of any statute of limitations. *Countrywide Home Loans, Inc. v. Burnette*, 177 So. 3d 1032, 1034 (Fla. 1st DCA 2015) ("Even if the statute of limitations has run on an action to enforce a promissory note and foreclose on a mortgage, the lien against the property remains valid until five years after the maturity date of the debt secured by the mortgage."). Notifying a consumer of the amount needed to satisfy the mortgage loan can serve useful purposes, particularly here, where the January 2017 statement was issued after the note had been accelerated in 2015, and before the foreclosure case was dismissed in February 2017. Thus, the district court did not err in finding that the content of the mortgage statement does not rise above the "garden variety" type of statement required by TILA, even for the "least sophisticated consumer." *Green*, 280 F. Supp. 3d at 1355.

Green cites *Kelliher v. Target Nat'l Bank*, 826 F. Supp. 2d 1324, 1328–29 (M.D. Fla. 2011), which found that a series of monthly statements that used increasingly strong language constituted debt collection under Florida's version of the FDCPA. *Kelliher* stands for the unremarkable principle that a monthly statement that is in conformity with TILA may nevertheless include additional

14

language that constitutes debt collection.[8] 826 F. Supp. 2d at 1329; *see also*

*Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014); *Reese v.*

*Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217 (11th Cir. 2012)

("The fact that the letter and documents relate to the enforcement of a security

interest does not prevent them from also relating to the collection of a debt within

the meaning of § 1692e."). The facts of *Kelliher*, however, are distinguishable

from the case here. The language Green cites from his one Mortgage Statement

lacks the strong demands for payment used by debt collectors in cases like

*Kelliher*.

### C. Attorney's Fees

Green alleges that any attempt to collect attorney's fees from the 2009

foreclosure action would be a violation of the FDCPA as a "threat to take any

action that cannot legally be taken or that is not intended to be taken." 15 U.S.C.

§ 1692e(5).

In the district court, Green's Amended Complaint alleged that the Notice of

Default sent in April 2015 is in violation of the FDCPA for attempting to collect

attorney's fees from the 2009 action—fees Green argues SLS is not entitled to

---

[8]  In *Kelliher*, the language in the series of statements progressed from "Please Contact Us About Your Past Due Account" to "stronger language: 'Account Seriously Past Due . . .'" and then to statements such as "If we don't set up payment arrangements . . . soon, we'll charge off your account and report it to the credit bureaus as bad debt." *Kelliher*, 826 F. Supp. 2d at 1328 (M.D. Fla. 2011).

because it did not prevail. As the district court correctly calculated, Green did not file his state court action until June 6, 2016, so his claims based on the Notice of Default are barred by the FDCPA's one-year statute of limitations. *See* 15 U.S.C. § 1692k(d).

Faced with that statutory bar to his claim, on appeal Green has changed his argument, and insists that SLS improperly tried to collect attorney's fees, in violation of the FDCPA, through documents that were delivered to him within the Act's statute of limitations: (1) the June 30, 2015 Foreclosure Complaint and (2) the Mortgage Statement dated January 18, 2017.

With respect to the 2015 Foreclosure Complaint, Green's Amended Complaint alleges that he sustained damages for being "sued for sums he did not owe," including "attorney's fees, . . . for which SLS had no legal right to collect." Even if we generously construe this language to be an allegation that the 2015 Foreclosure Complaint sought attorney's fees for both the 2015 and 2009 foreclosure actions, it fails to state a claim.

According to the FDCPA, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).  Even if the

16

undetermined and unspecified attorney's fees in the 2015 Foreclosure Complaint count as "debt," it is implausible to characterize that complaint as a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). The 2015 Foreclosure Complaint simply requests that the court determine attorney's fees—a request that would not count as debt collection activity since the legal basis and amount of fees awarded, if any, was indeterminate at that stage in the proceedings. The Foreclosure Complaint asks the court to determine the legal amount owed, if any; this request is not a communication to Green for direct payment of a debt. *See, e.g., Reese*, 678 F.3d at 1216 (finding a letter was "an attempt to collect a 'debt' within the meaning of the FDCPA," because it included language that demanded "full and immediate payment" of specific amounts due). Moreover, Green never explains how court-determined attorney's fees requested by a 2015 foreclosure action would somehow improperly include amounts from the earlier 2009 foreclosure action. The 2015 Foreclosure Complaint simply does not mention attorney's fees from 2009 in any way.

The cases cited by Green do not suggest that a foreclosure complaint constitutes a "demand for payment" by requesting undetermined and unspecified attorney's fees from the court. *See Freire v. Aldridge Connors, LLP*, 994 F. Supp. 2d 1284, 1287–88 (S.D. Fla. 2014) (finding that a foreclosure complaint that requested enforcement of a promissory note that sought a specific amount was debt

17

collection activity); *McFadden v. U.S. Bank N.A.*, No. 8:14-cv-2068-T-35MAP, 2015 WL 10352994, at *2–3 (M.D. Fla. Oct. 7, 2015) (same).

Regarding the 2017 Mortgage Statement, Green argues that an amount of fees shown in a line item in the statement indicates that SLS might have been attempting to obtain attorney's fees from the 2009 foreclosure action. In his view, the district court's failure to address this fact is reversible error. But Green made no claim in his Amended Complaint that the Mortgage Statement improperly tried to collect attorney's fees. The district court did not err by failing to address that argument in its order on the motion to dismiss because there was simply no such allegation in Green's Amended Complaint for the court to dismiss or sustain. Even if we look to the substance of Green's argument, he offers no explanation as to why he believes the "total unpaid fees" recited in the Mortgage Statement include attorney's fees from the 2009 foreclosure action, and once again we find nothing in that Mortgage Statement that rises to the level of debt collection beyond a standard mortgage statement. *See, e.g., Kelliher,* 826 F. Supp. 2d at 1328.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

18